United States District Court
Southern District of Texas
**ENTERED**
November 30, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEANDA O. DORNELLIEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-2900 |
| | § | |
| LEONARD MASENGALE and | § | |
| TDINDUSTRIES, INC., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## ORDER

Pending before the Court are Leonard Masengale ("Masengale") and TDIndustries, Inc.'s ("TDI") (collectively "Defendants") Motion for Summary Judgment (Doc. No. 13), Plaintiff Leanda O. Dornellien's ("Dornellien" or "Plaintiff") Response (Doc. No. 15), and Defendants' Reply (Doc. No. 17). Also before the Court is Defendants' Motion to Strike certain exhibits to Plaintiff's response (Doc. No. 18). Having reviewed the briefings, evidence, and relevant law, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion to Strike (Doc. No. 18), and GRANTS Defendants' Motion for Summary Judgment (Doc. No. 13).

### I.      Factual Background

TDI provides mechanical–construction and facilities services. TDI hired Plaintiff (an African American female) in late February as an HVAC Building Technician II ("Building Technician") after she had worked as a temporary employee for the company. TDI assigned Plaintiff to work at the George R. Brown Convention Center in Houston, Texas. As a Building Technician, Plaintiff was responsible for a wide variety of tasks, including general facility maintenance and repair of mechanical, electrical, plumbing, and lighting systems. Plaintiff alleges

that she primarily did work related to HVAC and the associated electrical systems. (Doc. No. 15 at 4). During Plaintiff's tenure at TDI, Defendant Masengale began his employment with TDI in June 2017 as a project manager.

When Plaintiff first started in early 2016, she initially reported to Henry Gilbert. Then, from November 20 2017 to March 2020, Plaintiff reported to Thomas Rourke. Plaintiff also reported to Steven Farris in 2019 until Farris transferred to a different department in late 2019. During this time, both Rourke and Farris reported to Gilbert, who in turn reported to Masengale. Plaintiff never reported directly to Masengale.

1. *Performance Reports between December 2018 and February 2020*

Between December 2018 and February 2020, TDI issued several performance evaluations and disciplinary actions to Plaintiff. They are summarized as follows:

- **December 10, 2018**: "Her excessive personal phone use is a major part of her distraction on the job, we have had multiple reports from the customer of her phone usage. She can also be combative and argumentative with partners." Multiple instances where she was "not at the job she was assigned to." (Doc. No. 13, Ex. B6).
- **May 9, 2019**: Plaintiff received this write-up after she was caught on her phone. (Doc. No. 13, Ex. B10, B11).
- **May 29, 2019:** This evaluation discusses performance issues of Plaintiff, including taking unauthorized breaks, taking personal phone calls during working time, and leaving her assigned tasks. (Doc. No. 13, B12).
- **September 13, 2019:** "Leanda continues to struggle with issues related to staying off her phone and staying focused on the tasks at hand. She is seen walking away from jobs . . . her pace of work needs improvement. When given certain tasks it can take her well over an hour to get started and she has no sense of urgency to complete the task." (Doc. No. 13, B13)
- **October 24, 2019:** Plaintiff's supervisor caught her in the stairwell conducting a Facetime call with her daughter, which resulted in a 3-day suspension. This report warned Plaintiff "this suspension is her final notice. **If she is caught taking an unauthorized break, or conducting personal calls on the job her employment with [TDI] will be terminated.**" Plaintiff signed this report. (Doc. No. 13, Ex. B14)
- **February 4, 2020:** This write-up documents more issues with Plaintiff's personal phone usage. (Doc. No. 13, Ex. B15)

- Finally, TDI uses a three-tiered rating system to differentiate employee performance: opportunity, successful, and exceptional. Plaintiff received an opportunity rating for 2019. (Doc. No. 13, Ex. B15).

Plaintiff was aware of these write-ups. (Doc. No. 13, Ex. 1 at 159:1-8). She contends that the allegations in the performance reports are false, that she had permission to take breaks, and that every employee does the same thing. (Doc. No. 13 at 12). Thus, she alleges that she was issued these write-ups based on racial and gender-based discrimination.

2. *January 2019 Surgery*

In January 2019, Plaintiff underwent surgery following a breast cancer diagnosis. (Doc. No. 15 at 8). Plaintiff was given "light duty restrictions" from her healthcare provider and returned to work later that month. Plaintiff submitted her request for accommodations to TDI and did not complain at the time about how the accommodations were implemented. (Doc. No. 13 at 12). Plaintiff was assigned to perform tasks such as visual inspections, tool inventory, and painting. (*Id.*); (Doc. No 15 at 8). Plaintiff alleges that these tasks also included cleaning drains and other floor maintenance. (*Id.*).

3. *Failure to Receive Promotion and Pay Raise*

Plaintiff alleges that she sought promotion three times during her employment but was denied each time. The first time she sought promotion, Plaintiff applied for a Maintenance Supervisor position. Masengale allegedly hired his friend for the position. The second time Plaintiff sought promotion, she alleges she interviewed with Masengale but claims that once again he gave the position to an ex-coworker or friend. (Doc. No. 15 at 6–7). Later, the third time Plaintiff applied, the position was awarded to Farris, who became Plaintiff's supervisor. (*Id.*).

Plaintiff alleges that both Rourke and Farris were promoted over her and were made her supervisors. (Doc. No. 15 at 4). Plaintiff contends that Rourke and Farris, both white males, were

hired after her and that she trained them. With regard to Rourke, Defendants disagree with Plaintiff's factual account. According to Defendants' reply, Rourke began employment with TDI on October 1, 2015, as a Building Technician III, prior to Plaintiff's February 2016 employment as a Building Technician II. (Doc. No. 17 at 20). Defendants provide Rourke's employment history records as evidence to support this. (Doc. No. 13, Ex. B24).

With regard to Farris, Plaintiff contends that Farris arrived at TDI unexperienced in the field after having worked at a mattress store and had no experience in HVAC or maintenance. She says that she taught him the basics of HVAC maintenance and repair. Plaintiff does not deny that Farris held a bachelor's degree in business management. Plaintiff also does not deny that Farris received "successful" and "exceptional" performance ratings. (Doc. No. 13 at 5).

Additionally, in December 2019, Masengale allegedly told Plaintiff that everyone but her would be receiving a raise. (Doc. No. 15 at 6).

4. *Termination*

Plaintiff went to Human Resources and requested a transfer from Masengale's department in January 2020. The record does not show that she was ever transferred, because shortly thereafter, on March 3, 2020, Plaintiff was terminated by Rourke.

The reason for her termination, given by Defendants, involves her shift on Saturday, February 29, 2020. Plaintiff was scheduled to work from 7 a.m. to 4 p.m. When not performing a specific task on her assigned weekend, Plaintiff was required to perform regular maintenance tasks around the facility until a specific task became available. Defendants allege that Plaintiff did not appear on the security camera system for approximately two hours that morning. Another employee sent a picture of Plaintiff to Rourke that showed her sitting at a computer doing schoolwork. That employee complained: "it's almost 9 o'clock and [she] still doesn't start

4

working." Shortly before receiving the picture from the employee, Rourke had assigned Plaintiff a specific task which she did not begin for another hour. Later, Plaintiff submitted a work report stating she had worked eight hours for her assigned shift that day. Rourke made the decision to terminate Plaintiff's employment on March 3, 2020, because Plaintiff had been warned about her job performance and taking unauthorized breaks and because Plaintiff was untruthful about the reported hours.

According to Plaintiff, however, "all the reasons given [for her termination] were false, and the Defendants have been planning to terminate her all along. All allegations leveled against her were for actions White employees took without any repercussion. [Plaintiff] does not believe her phone use is excessive . . . the write-up was a way to intimidate her, not because she committed the errors contained therein." (Doc. No. 15 at 10-11); (Doc. No. 15, Ex. 2 at 96:11–99:25). Plaintiff states that she performed a full eight hours of work that day, and that she had permission from Rourke to be on the computer during her shift. (Doc. No. 15 at 14).

Following her termination, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and later this lawsuit ensued.

## I.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant

then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara*, 353 F.3d at 405. It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## II.      Evidentiary Objections

The Court first addresses Defendants' Motion to Strike certain exhibits to Plaintiff's Response. (Doc. No. 18).  Plaintiff did not respond to Defendants' Motion to Strike. Under the local rules of the Southern District of Texas, a failure to respond is a representation of "no opposition." L.R. 7.4. Defendants object to the following evidence: (1) Exhibit 8a, a sworn statement by Plaintiff; (2) Exhibit 8b, a sworn statement by Plaintiff's brother Harvey Dornellien; (3) Exhibits 1 and 13; and finally (4) Exhibits 13, 18, and 23. While all of these documents could be excluded for failure to comply with the rules, the Court will nevertheless address Defendants' various arguments regarding the exhibits to give Plaintiff the benefit of the doubt.

First, Defendants challenge Exhibit 8a, which is an affidavit by Plaintiff. They argue that this affidavit is a sham affidavit that contradicts prior testimony and contains inadmissible conclusory statements. In essence, they argue that the affidavit merely regurgitates arguments

6

made by counsel and that it manufactures facts, which contradict Plaintiff's deposition testimony, in an attempt to create a fact issue for summary judgment. "[A] plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation. This authority stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation. *Free v. Wal-Mart La., LLC*, 815 Fed. App'x 765, 766 (5th Cir. 2020) (per curiam).

Having examined Plaintiff's affidavit and deposition, the Court agrees that certain key parts of Dornellien's deposition have been contradicted—namely, her testimony regarding her transfer request in January 2020. In her deposition, Dornellien testified that she never complained of discrimination or mentioned discrimination as a reason for wanting a transfer; meanwhile, in the affidavit, Dornellien said that she "complained about all the discrimination . . . to the Human Resources Department." (Doc. No. 15, Ex. 8a at 4). Finding this to be an attempt to raise a fact issue on her retaliation claim, the Court finds Exhibit 8a to be a sham affidavit. The Court hereby GRANTS Defendants' motion to strike Exhibit 8a to the extent it contradicts Dornellien's deposition.

Second, Defendants challenge Exhibit 8b, which is an affidavit by Plaintiff's brother Harvey Dornellien. Defendants challenge the affidavit because it proffers improper expert testimony, contains inadmissible hearsay, and lacks personal knowledge. Although the Court "may consider hearsay at the summary judgment stage if the hearsay could be reduced to a form admissible at trial," the Court agrees that the entirety of Harvey Dornellien's affidavit lacks

personal knowledge. *Heller v. Shahroodi*, No. CV H-17-2544, 2019 WL 1556315 at *3 (S.D. Tex. Feb. 20, 2019). There is no evidence that Harvey ever worked at TDI, yet he opined that "the culture at TDIndustries is one of extreme prejudice and of a racial nature." (Doc. No. 15, Ex. 8b at 8). On the whole, his affidavit is replete with quotes from conversations with Plaintiff and opinions on TDI and Masengale (presumably based on those conversations). The Court hereby GRANTS Defendants' motion to strike Exhibit 8b and will not consider it for the purposes of summary judgment.

Third, Defendants challenge Exhibits 1 and 13 because they are unauthenticated and contain hearsay. These exhibits contain diplomas, certificates, and scholarships that Plaintiff purportedly earned for her HVAC work. Each one of the challenged documents has the appearance of authenticity, which is a factor that may be considered by a court. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1190, 1224 (E.D. Pa. 1980). Additionally, the Court presumes that Plaintiff will testify at trial and be able to authenticate the challenged documents at that time. Defendants' motion to strike exhibits 1 and 13 is hereby DENIED.

Fourth and finally, Defendants challenge Exhibits 13, 18, and 23 because they were not produced during discovery. Federal Rule of Civil Procedure 26(a) provides that "a party must, without awaiting a discovery request, provide to the other parties…a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Rule 37(c) additionally provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

harmless." Fed. R. Civ. P. 37(c). The disclosing (or late disclosing) party bears the burden of proving the failure to timely disclose was substantially justified or harmless. *See Sightlines, Inc. v. La. Leadership Inst.*, No. 3:13-cv-00527-SDD-RLB, 2015 WL 77671, at *1 (M.D. La. Jan. 6, 2015).

Defendants argue that all of the challenged documents were responsive to earlier requests for production. As mentioned above, Exhibit 13 contains Plaintiff's various HVAC certifications. Exhibit 18 contains pictures presumably related to the type of work Plaintiff performed, and Exhibit 23 contains documents relating to Plaintiff's job performance at her subsequent employer. Defendants argue that they will be prejudiced because they were "unable to inspect these documents prior to deposing Plaintiff and moving for summary judgment." (Doc. No. 18 at 10–11). In the next sentence, however, Defendants concede that Plaintiff "made some of these documents available for inspection to counsel for Defendants when . . . he took Plaintiff's deposition on April 7, 2023, after the close of discovery." (*Id.*)

The Court acknowledges Defendants' frustration with Plaintiff's repeated failure to comply with the rules. Nevertheless, the Court is not convinced that they have been harmed by reference to these documents at the summary judgment stage. While the Court seriously questions the admissibility of some of these documents, particularly the emails in Exhibit 23, the Court may address these issues at trial. Given that Defendants' challenge relates only to the fact that these documents were not produced during discovery and finding no prejudice because Defendants admit they had access to them as of April 7, 2023, the Court therefore DENIES Defendants' motion to strike Exhibits 13, 18, and 23 for the purposes of summary judgment.

Therefore, the Court will consider Exhibits 1, 13, 18, and 23 in its analysis but will not consider Exhibits 8a and 8b.

### III.     Analysis

Plaintiff brings claims of race-based and gender-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Chapter 21 of the Texas Labor Code ("TCHRA"). Defendants move for summary judgment on each cause of action, and the Court will address each of Defendants' arguments in turn.

### A.  Plaintiff's § 1983 Claims against Mesengale and TDI

Defendants first move for summary judgment on Plaintiff's § 1983 claims because neither Mesengale nor TDI is a state actor. Section 1983 provides a cause of action against a person "who may fairly be said to be a state actor" and who "acts under color of state law." *Johnson v. Select Energy Srvs.*, No. H-12-2390, 2013 WL 5425255, at *1 n.3 (S.D. Tex. Sept. 24, 2013). Plaintiff does not respond to this issue in her Response, and the record suggests that Plaintiff's counsel earlier agreed to stipulate a dismissal of this claim. (Doc. No. 1, Ex. D). There is no evidence that Mesengale or TDI were anything but private actors. Defendants' motion for summary judgment on Plaintiff's § 1983 claims is hereby GRANTED.

### B.  Title VII and TCHRA Claims against Leonard Masengale

Defendants next move for summary judgment on Plaintiff's Title VII and TCHRA claims against Masengale. Individual employees are not personally liable for discrimination claims under Title VII or the TCHRA. *See Chehl v. S. Univ. & Agric. Mech. Coll.*, 34 Fed. App'x 963 (5th Cir. 2002) ("Title VII does not impose personal liability on individuals."); *see also Suarez v. Nueces Cty., Tex.*, No. 2:07-cv-207, 2008 WL 11395552, at *1 (S.D. Tex. Mar. 9, 2008) ("Supervisors and managers are not considered employers under the Texas Labor Code and therefore, are not individually liable for discrimination under the [TCHRA]"). Plaintiff does not respond to this issue

in her Response. Defendants' motion for summary judgment on Plaintiff's Title VII and TCHRA claims against Mesengale is hereby GRANTED.

### C. Timing and Limitations of Plaintiff's TCHRA and Title VII Claims

Defendants also move for summary judgment on Plaintiff's Title VII and TCHRA claims because they are barred by Plaintiff's failure to meet administrative requirements and because the challenged acts fall outside the applicable statute of limitations. Defendants present three arguments: (1) that Plaintiff's TCHRA claims are administratively barred, (2) that Plaintiff's Title VII claims are time-barred, and (3) that both Plaintiff's THCRA and Title VII claims are based on alleged acts that occurred outside the requisite filing periods and are thus barred by limitations.

#### 1. *Whether Plaintiff's TCHRA Claims are Administratively Barred*

Defendants argue that Plaintiff's TCHRA claims are administratively barred because she failed to exhaust her administrative remedies. A plaintiff must file an administrative complaint with the Texas Workforce Commission ("TWC") within 180 days of the alleged discriminatory act before bringing a claim under the TCHRA. Tex. Lab. Code Ann. § 21.202(a); *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 977–78 (N.D. Tex. 2011). Meeting this 180-day deadline is mandatory to bring a claim for discrimination under the TCHRA. *Ryan v. Wells Fargo, N.A.*, No. 3:21-CV-2627-D, 2022 WL 256503 (N.D. Tex. Jan. 27, 2022). Defendants argue that, because Plaintiff was terminated on March 3, 2020, it was necessary for Plaintiff to file her administrative complaint within 180 days of March 3, 2020—by August 31, 2020.[1] Defendants argue that Plaintiff never filed an independent complaint with the TWC. Further, they argue that when she filed her complaint with the EEOC, she failed to check the box requesting a dual-agency filing and thus failed to complain that Defendants violated the TCHRA or any other Texas law. (Doc. No. 13 at

---

[1] The Court's independent calculation confirms that the 180-day deadline expired August 31, 2020.

17). Therefore, Defendants argue that this Court should grant summary judgment based on Plaintiff's failure to exhaust her administrative remedies.

Nevertheless, Defendants acknowledge that Plaintiff filed a complaint with the EEOC on September 1, 2020 (only one day after her alleged deadline) and that, despite Plaintiff's failure to check the box, the EEOC forwarded the complaint to the TCHRA on September 14, 2020. *See* (Doc. No. 13, Ex. 33, 34). Under the Worksharing Agreement between the EEOC and the TWC, a complaint filed with the EEOC, and forwarded by the EEOC to the TWC, satisfies the requirements of the TCHRA and is considered, for all legal and practical purposes, to have the same filing date as the original complaint filed with the EEOC. *See Vielma v. Eureka Co.*, 218 F.3d 458, 461 (5th Cir. 2000); *Price v. Phila. Am. Life Ins. Co.*, 934 S.W.2d 771, 773-74 (Tex. App. 1996, no writ). Therefore, the Court will consider the date of filing with the TWC to be September 1, 2020.

In response to this argument, Plaintiff vaguely contends that she "timely filed discrimination Complaint with the EEOC against TDIndustries." (Doc. No. 15 at 16). Plaintiff does not provide an independent calculation of when the 180-day period began and expired. She also does not argue that the September 1, 2020, date cited by the EEOC in its "Notification & Acknowledgement of Dual-Filed Charge" was factually incorrect. (Doc. No. 13, Ex. 34). Finally, Plaintiff does not argue that the complaint was timely with regards to the TCHRA 180-day deadline, specifically, only that it was "timely" (which may refer to the Title VII 300-day deadline). Given Plaintiff's failure to justify the one-day delay with supporting case law or a material dispute as to the time-period, the Court agrees with Defendants that the claims are time-barred. The Court hereby GRANTS Defendants' motion for summary judgment on Plaintiff's claims brought pursuant to the TCHRA.

## 2. *Whether Plaintiff's Title VII Claims are Time-Barred*

Defendants argue that Plaintiff's Title VII claims are also time-barred. Title VII claims must be brought within 90 days of the date in which a right-to-sue letter is issued. 42 U.S.C. § 2000e–5(f)(1). The EEOC issued Plaintiff a right-to-sue letter on March 5, 2021, and both parties agree she filed her suit in state court within the 90-day window on June 2, 2021. *See* (Doc. No. 13 at 18). Defendants, however, protest that "service on TDI and Masengale was completed sixty-four days and eighty-four days after the limitations period ended, respectively." (*Id.*). TDI was served on August 5, 2021, and Masengale was served on August 25, 2021. Thus, the record establishes that Plaintiff did not achieve service until a little over two months past the running of the 90-day right to sue window.

Defendants argue that this delay in service is grounds for granting them summary judgment on Plaintiff's Title VII claims. First, they argue that Texas law should apply to this issue.[2] They note that, in Texas, the filing of a lawsuit alone does not toll the limitations period unless the plaintiff exercises due diligence in effecting service. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) ("[w]hen a plaintiff files a petition within the limitations period, but does not serve the defendant until after [that] period has expired, the date of service relates back to the date of filing if the plaintiff exercised diligence in effecting service."). The record establishes that Plaintiff did not achieve service until a little over two months past the running of the 90-day right to sue window.

---

[2] The Court agrees that Texas law should apply, as Plaintiffs did not dispute this point and case law supports applying Texas law. Analogous cases have applied Texas law when dealing with a Title VII lawsuit that was filed in state court within the 90-day EEOC window, Defendants were served process after the 90-day window, and the case was subsequently removed to federal court. *See Shepard v. Magellan Midstream Partners, L.P.*, No. EP-07-CV-307-KC, 2009 WL 10701868 (W.D. Tex. Jan. 13, 2009).

In response, Plaintiff argues that she was diligent in obtaining service. Plaintiff argues that she issued a Request for Issuance of Service on June 3, 2021, but that a computer glitch caused a delay. Plaintiff's counsel allegedly went back and forth with the District Court's office, through phone calls and physical meetings, to obtain service in the following months. By July 30, 2021, the issues were resolved. As such, Plaintiff argues that she was diligent in obtaining service and that the Title VII claims should not be barred.

The Court agrees with Plaintiff and does not find that the two-month delay evinces a lack of diligence as a matter of law. *See Olivarez v. Lloyds*, No. 7:14-CV-896, 2015 WL 12552011 (S.D. Tex. Sept. 22, 2015) (denying defendant's motion for summary judgment after defendant received delayed service because plaintiff's "counsel has been inundated with similar cases [which] at least raises a fact issue regarding whether service approximately four-and-a-half months after filing suit" was diligent). The Court hereby DENIES Defendants' motion for summary judgment as to Plaintiff's Title VII claims on this issue.

3. *Whether Plaintiff's Title VII and TCHRA Claims are Barred by Limitations Because the Alleged Conduct Occurred Outside the Limitations Period*

Defendants argue that certain theories underlying Plaintiff's Title VII and TCHRA claims are barred by limitations because the alleged conduct occurred outside the limitations period.[3] (Doc. No. 13 at 19). Specifically, Defendants urge the Court to only consider allegations of discrimination that occurred within 300 days of September 1, 2020 (the date of Plaintiff's EEOC charge). Accordingly, they maintain that any allegations of discrimination which occurred before November 6, 2019—namely, Plaintiff's claims based on assignment of menial work, denial of sick leave, denial of tuition reimbursement, and failure to promote—should not be considered.

---

[3] Having already dismissed Plaintiff's TCHRA claims, the Court will focus its analysis on the Title VII claims.

In response, Plaintiff appears to assert that the entirety of her case is governed by the four-year statute of limitations set out in *Jones v. R.R. Donnelly & Sons*, 541 U.S. 369 (2004). *See* (Doc. No. 15 at 19). As Defendants point out in their reply, however, *Jones* governs only race discrimination claims brought under § 1981 which "arose under" the amendment to § 1981. It is therefore inapplicable to Plaintiff's Title VII claims discussed here.

Nevertheless, the Court does not completely agree with Defendants' characterization of the relevant limitations for Plaintiff's Title VII claims. The Fifth Circuit addressed a similar timing issue. *Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. App'x 387, 391 (5th Cir. 2005). There, the Circuit discussed the continuing violation doctrine, under which "a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Henson*, 128 Fed. App'x at 391 (5th Cir.2005) (citing *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002)). A continuing violation "involves repeated conduct," and "cannot be said to occur on any particular day." *Id.* It instead "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). When the employer's conduct consists of a series of "discrete discriminatory acts," the fact that one or more falls within the actionable time period does not save related claims that would otherwise be time-barred. *Id.*

The continuing violation doctrine does not apply when "the relevant discriminatory actions alleged in the complaint '[are] the sort[s] of discrete and salient event[s] that should put an employee on notice that a cause of action has accrued.'" *Windhauser v. Bd. of Supervisors for Louisiana State Univ. & Agr. & Mech. Coll.*, 360 Fed. App'x 562, 566 (5th Cir. 2010) (quoting *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998)) (alteration in original).

After examining the briefing and summary judgment evidence, the Court finds that the following alleged discriminatory acts were discrete acts that cannot be brought into Plaintiff's Title VII actionable period by the continuing violation doctrine: assignment of menial work, denial of sick leave, and denial of tuition reimbursement. This is because these alleged discriminatory acts are independent of her termination that occurred on March 3, 2020, and do not otherwise relate to other alleged discrimination after November 6, 2019. Accordingly, the Court hereby GRANTS Defendants' motion for summary judgment on Plaintiff's Title VII claims based on assignment of menial work, denial of sick leave, and denial of tuition reimbursement.

Plaintiff's Title VII claims based on failure to promote, however, is sufficiently related to her claim for termination because both employment decisions relied on her write-ups and performance reports, which she alleges were discriminatory and false. Plaintiff's claim for failure to promote is therefore considered to be actionable under Title VII under the continuing violations doctrine. Defendants' motion for summary judgment on this issue is therefore DENIED.

## D. Discrimination Claims Under Title VII and Section 1981

Defendants' remaining arguments for summary judgment are based on the merits of Plaintiff's claims. Defendants argue that Plaintiff has not raised a genuine issue of material fact supporting a *prima facie* case for discrimination, and, even if she could raise a *prima facie* case, that Plaintiff has not raised a genuine issue of material fact that Defendants' given explanation is pretextual.

Claims of discrimination based on circumstantial evidence under Title VII and § 1981 are governed by the *McDonnell Douglas* burden-shifting framework. *See Assariathu v. Lone Star Health Mgmt. Assocs., L.P.*, 516 Fed. App'x 315, 318–19 (5th Cir. 2013); *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016). Under this three-part analysis, an employee must first set forth

16

a *prima facie* case of discrimination, after which the burden of production shifts to the employer

to articulate a legitimate nondiscriminatory reason for its decision. *Assariathu,* 516 Fed. App'x at

319. The presumption of discrimination disappears if the employer presents a nondiscriminatory

reason, and the employee must present evidence that the employer's proffered reason was mere

pretext for discrimination. *Morris*, 827 F.3d at 400.

To establish a *prima facie* case, Plaintiff must demonstrate that she: (1) is a member of a

protected class; (2) was qualified for the position at issue; (3) suffered an adverse employment

action; and (4) was treated less favorably than others similarly situated outside the protected class.

*Id.* The "similarly situated" prong requires a plaintiff to show that she "was treated less favorably

than others 'under nearly identical circumstances.'" *Id.* at 401. As a result, the practical effect is

that "comparators must share the same job or responsibilities, the same supervisor, the same

conduct leading to the adverse decisions, and essentially comparable violation histories." *Ray v.*

*United Parcel Serv.*, 587 Fed. App'x 182, 194 (5th Cir. 2014). Additionally, for § 1981 claims, an

employee "must prove discriminatory intent." *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318

(5th Cir. 2001) If a plaintiff cannot meet their burden in establishing a *prima facie* case of

discrimination, the Court need not reach the subsequent burden-shifting analysis under *McDonnell*

*Douglas.*

Here, Plaintiff presents several theories for discrimination under § 1981 and Title VII.

Defendants move for summary judgment on each theory. The Court will address each theory

accordingly.[4]

---

[4] The Court notes that, in addition to the following theories, Plaintiff appears to add a new theory in her Response—
that she was discriminatorily subjected to drug testing every month for three consecutive months. (Doc. No. 15 at 5).
The Court initially notes that new theories of liability cannot be brought up in a response. Evidence in the record,
however, shows that she was tested only twice during her employment—November 8, 2017, and September 13, 2018.
(Doc. No. 17 at 13); (Doc. No. 17-1). Moreover, a drug test performed in a routine fashion is not an adverse
employment action, and Plaintiff's mere suspicions are not enough to overcome summary judgment. *See Jackson v.*

1. *Discriminatorily Assigned Menial Work*

Defendants first move for summary judgment on Plaintiff's allegation that she was discriminatorily assigned menial work. Plaintiff alleges that after she returned to TDI from her surgery in January 2019, TDI discriminatorily assigned her menial work. She claims she was made to do work beneath her skills and unrelated to her job after she returned from surgery. (Doc. No. 15 at 5); (Doc No. 15, Ex. 2 at 51:21-55:9). Plaintiff has failed to show a genuine issue of material fact for this claim. She has not presented a *prima facie* case for discrimination because she has not shown any evidence of the fourth element that somebody similarly situated was treated more fairly. While Plaintiff vaguely argues that her job was given to a colleague named Henry Picard, she has presented no evidence that he was similarly situated. In her deposition, she admitted that she did not know his experience, level of education, or performance history. (Doc. No. 13, Ex. 1 at 62:15-17, 170:14-16). Thus, she has not presented a fact issue on her *prima facie* case.

Even assuming Plaintiff raised a *prima facie* case, she has not shown that Defendants' articulated explanation is pretextual. Defendants contend that they adjusted Plaintiff's work assignments based upon accommodations that she specifically requested following her surgery in January 2019. (Doc. No. 13 at 21). Therefore, Defendants have articulated a legitimate, nondiscriminatory reason for the change in work assignments. Plaintiff has presented no evidence

---

*Wood Grp. USA, Inc.*, No. H-20-0409, 2021 WL 3832936, at *6-8 (S.D. Tex. Apr. 1, 2021), aff'd, 2022 WL 1101738 (5th Cir. 2022). This theory, even if it had been pleaded properly, does not survive summary judgment.

that this reason, in particular, was pretextual.[5] Therefore, the Court hereby GRANTS Defendants'
motion for summary judgment on this claim of discrimination.[6]

## 2. *Discriminatorily Denied Sick Leave*

Defendants next move for summary judgment on Plaintiff's allegation that she was
discriminatorily denied sick leave. The Court finds Plaintiff has not presented a *prima facie* case
for discrimination based on TDI's denial of sick leave. Plaintiff's briefing on this issue argues that
"she was made to take an undertaking that she will not use her PTO or sick days for the
appointments. Steven Farris told her to use personal time. Sometimes he would threaten that if she
left, she would get fired . . . She ran out of PTO while she was on her surgery." (Doc. No. 15 at 9).
This recitation fails to present a fact issue on the third and fourth elements of discrimination. It
does not present a fact issue that an adverse employment decision was made or that someone
similarly situated was treated more fairly.

Regarding the adverse employment decision element, Defendants cite case law for the
notion that "a denial of leave for a specific date and time does not constitute adverse employment
action." (Doc. No. 13 at 22) (citing *Lara v. Kempthorne*, 673 F. Supp. 2d 504, 518–19 (S.D. Tex.
2009). While the case cited by Defendants involved vacation time as opposed to sick leave,
Plaintiff has provided no case law to the contrary. Moreover, Defendants presented evidence that

---

[5] Plaintiff spends most of her 35-page Response arguing pretext, generally. Pretext only comes into play, though, once
a Plaintiff has met her burden of establishing a *prima facie* case. Here, Plaintiff's briefing and summary judgment
evidence do not lay out each theory of discrimination or articulate evidence supporting each element of a *prima facie*
case. The Court is left with, essentially, only her "Factual Background" section and deposition transcript to find
support for her claims. While the Court must draw inferences in favor of Plaintiff (the non-movant), it can only do so
much when Plaintiff herself has not adequately presented the evidentiary basis for her claims.

[6] In her Response, Plaintiff appears to raise an additional theory for discrimination based on her 2019 surgery—that
she was discriminatorily denied accommodations. (Doc. No. 15 at 8). Specifically, she argues that "Len Masengale
Discriminately [sic] Failed to Genuinely Accommodate Ms. Dornellien's light work restriction after her surgery."
(*Id.*). Thus, it appears that Plaintiff argues both that Defendants discriminatorily failed to give her "light work," yet
simultaneously, discriminated against her by giving her "menial work" after her surgery. Again, new theories cannot
be raised in a response. Moreover, the Court finds that Plaintiff failed to raise a genuine issue of fact for this theory as
well, given that she has listed no comparators as discussed above.

TDI followed its policy. They state: "TDI's Paid Personal Time policy does not cover intermittent leave and requires employees to use their PPT for less-than-four-day sickness." (Doc. No. 13 at 22); *see also* (Doc. No. 13, Exs. 3, 5). Plaintiff thus failed to present any evidence that Defendants denied her leave to which she was entitled. *See Arensdorf v. Snow*, No. CIV A H-05-2622, 2006 WL 3302532, at *8 (S.D. Tex. Nov. 13, 2006) (holding that "advising an employee of the adverse consequences of failing to support a lengthy sick leave request with a doctor's note is not an adverse employment action" because "[defendant] took no action that denied Plaintiff any leave to which she was entitled"), *aff'd*, 259 F. App'x 639 (5th Cir. 2007).

Furthermore, Plaintiff has presented no evidence on the fourth element. She did not argue or provide summary judgment evidence that someone similarly situated was able to use sick leave instead of personal time for leave of less than four days. Therefore, Plaintiff has not met her burden in showing a genuine issue of material fact exists in support of her discrimination claim based on denial of sick leave. Accordingly, Defendants' motion for summary judgment on this issue is hereby GRANTED.

### 3. *Discriminatorily Denied Tuition Reimbursement*

In addition, Defendants move for summary judgment on Plaintiff's claim for discrimination based on TDI's denial of tuition reimbursement. The Court finds that Plaintiff has not presented a *prima facie* case for discrimination on this theory as well. Plaintiff's claim fails on the third and fourth element. First, there is no genuine issue of material fact that an adverse employment action took place because an employer's denial of tuition reimbursement is not an actionable employment action. *See Parra v. Devon Energy Prod. Co.*, No. H-10-0602, 2011 WL 1232818, at *6 n.24 (S.D. Tex. Mar. 31, 2011) (holding a plaintiff's complaint that he was not reimbursed for his MBA tuition was not an adverse employment action).

Moreover, Plaintiff has presented no evidence showing that similarly situated employees were treated more favorably. Plaintiff argues that the reimbursement denial was discriminatory because Farris and Rourke were reimbursed for tuition in their programs. Their programs, however, were for HVAC certification programs at Lone Star College. Plaintiff's tuition request, by contrast, was for mechanical engineering classes. TDI's continuing education policy explicitly excludes reimbursement to employees pursuing "academic degrees" like mechanical engineering. (Doc. No. 13, Ex. 9). When asked at her deposition if she knew whether the mechanical engineering classes would have been covered by TDI's continuing education policy, Plaintiff merely responded "it should have." (Doc. No. 13, Ex. 1, 177:13-177:9). Therefore, since she has not raised a fact issue on the third or fourth elements, Plaintiff's discrimination claims based on denial of tuition reimbursement fail. Defendants' motion for summary judgment on this issue is hereby GRANTED.

4. *Discriminatorily Denied Promotional Opportunities*

Defendants next move for summary judgment on Plaintiff's theory that she was denied promotional opportunities. The Court finds that Plaintiff has not raised a genuine fact issue as to this theory either since she has not presented competent summary judgment evidence that the two coworkers she cites—Rourke and Farris—were "similarly situated."

As noted, the Fifth Circuit has said that to be similarly situated, a plaintiff must show the defendant gave preferential treatment to other employees under "nearly identical" circumstances. *See Blasingame*, 2013 WL 5707324, at *12 (comparator held a different job title and the comparator's performance was superior to plaintiff's); *Standley v. Rogers*, 202 F. Supp. 3d 655, 664 (W.D. Tex. 2016) (comparator did not have similar work or violation histories as the plaintiff), *aff'd*, 680 Fed. App'x 326 (5th Cir. 2017).

The record shows that Rourke was hired before Plaintiff and was hired as a Building Technician III, while Plaintiff was hired as a Building Technician II. (Doc. No. 17 at 20). Therefore, Rourke was not similarly situated because he had worked for Defendants longer and held a different position. Additionally, the record shows that Farris, while hired after Plaintiff, held a degree in business management and received "successful" and "exceptional" ratings. (Doc. No. 13 at 5). Plaintiff has presented no evidence that Farris and Rourke received performance write-ups for using their personal phones, taking unauthorized breaks, or having subpar relationships with partners. Therefore, even if Plaintiff could meet her *prima facie* burden, Defendants have a legitimate, nondiscriminatory reason for promoting Farris and Rourke over her given her documented performance issues.

Thus, the Court finds that Plaintiff has not raised a genuine issue of material fact supporting her position that she was discriminatorily passed over for a promotion. *See Dailey v. Vought Aircraft Indus., Inc.*, 135 Fed. App'x 642, 644–45 (5th Cir. 2005) ("Th[e] evidence established a nondiscriminatory reason for not promoting Dailey—the applicants selected for promotion were more qualified than Dailey[.]"); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881–82 (5th Cir. 2003) (employer's explanation that it chose the "best qualified" candidates was a legitimate, non-discriminatory justification for not promoting the employee). Defendants' motion on this issue is hereby GRANTED.

### 5. *Discriminatorily Denied a Pay Raise*

Defendants also move for summary judgment on Plaintiff's theory that she was denied a pay raise. Plaintiff contends that she was denied a pay raise in December 2019 when Masengale told her that "everybody will be getting a raise, except [her]." (Doc. No. 15 at 6). While Plaintiff states that everybody but her received a pay raise, she provides no evidence that "everybody" was

22

similarly situated to her. "In particular, she has not shown that any of them shared her history of on-the-job-violations." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016). Given the total absence of any evidence pertaining to comparators, the Court finds that Plaintiff has not raised a fact issue showing that she was discriminatorily denied a pay raise. Therefore, Plaintiff fails to make a *prima facie* case of discrimination.

Additionally, Defendants argue that they had a legitimate, nondiscriminatory reason for the denial of a raise: Plaintiff's "Opportunity" rating for 2019 and performance issues disqualified her from receiving a raise. (Doc. No. 13, Ex. B15); *see Outley*, 840 F.3d at 218 (employer met burden by citing plaintiff's performance issues). Because Plaintiff has not met her burden, Defendants' motion for summary judgment on this issue is hereby GRANTED.

6.  *Discriminatorily Terminated*

Finally, Defendants move for summary judgment on Plaintiffs claims that she was discriminatorily terminated. Plaintiff claims that she was "unlawfully terminated" on March 3, 2020. However, Plaintiff does not identify any comparator and presents no evidence that any other employee was engaged in "nearly identical" misconduct for which she was terminated. Although Plaintiff's briefings and discovery responses broadly claim that Rourke, Farris, and Picard "were treated more favorably than [her]," Plaintiff admits at her deposition that she has no personal knowledge about these employees' alleged wrongdoing. An "unsubstantiated assertion is insufficient to raise a fact issue that a similarly situated employee was treated more favorably." *Preston v. Tex. Dep't of Family & Protective Servs.*, 222 Fed. App'x 353, 358 (5th Cir. 2007); *see also Parra*, 2011 WL 1232818, at *6 (employee failed to identify any comparator and presented no evidence that another employee made similar misrepresentations but was not terminated). Defendants are therefore entitled to summary judgment because Plaintiff has failed to show a

23

*prima facie* case that she was terminated based on race or gender. The Court, therefore, need not reach the issue of whether Defendants' proffered explanation is pretextual. Defendants' motion on this issue is hereby GRANTED.

7. *Pretext*

As noted above, Plaintiff has not raised a genuine issue of material fact supporting a *prima facie* case for discrimination on any theory. That being the case, the Court need not address whether Plaintiff's performance issues (the nondiscriminatory explanation offered by Defendants for failing to promote Plaintiff, denying her a raise, and terminating her) were pretextual. Nevertheless, given that Plaintiff extensively briefed the issue of pretext in her response, the Court will address her various arguments. After reviewing the briefings, evidence, and relevant case law, the Court finds that had Plaintiff raised a fact issue supporting her *prima facie* case, the Court would alternatively grant Defendants' motion on pretext for the following reasons.

Plaintiff argues that Defendants' explanation—her unsatisfactory performance reports—is pretextual. She makes several arguments for pretext, none of which raise a genuine issue of material fact. For example, Plaintiff argues that several African American employees were terminated at TDI in a short period of time, which she alleges constitutes statistical data showing pretext. Specifically, Plaintiff refers to "Big Mike," Lester Tyler, an unnamed black female, and James Ponds as black employees who were terminated under the supervision of Masengale. (Doc. No. 15 at 24). When questioned about these black employees at her deposition, though, Plaintiff did not have sufficient information to raise a fact issue. Plaintiff testified she does not know when, why, or who terminated Big Mike. (Doc. No. 13, Ex. 2 at 91:2-10). She only heard rumors that Tyler was fired because of a drug test. (*Id.* at 92:10-93:7). She also did not know whether the black female employee, who reported to Rourke, was terminated. (*Id.* at 93:8-21). Finally, she did not

have knowledge about Masengale's alleged firing and rehiring of James Ponds (*Id.* at 90:16-91:1). Plaintiff has not presented any other evidence about employees and their termination, aside from her own deposition testimony which was based upon supposition and speculation.

The Court finds that Plaintiff's testimony, alone, is insufficient to raise a genuine issue of fact for pretext. Her speculation cannot "offset[] [Defendants'] well-supported explanation for [Plaintiff's] termination." *See Myers*, 2000 WL 178173, at *2; *Peerless Indus.*, 322 Fed. App'x at 361, 365, 367–68 (employer explained that Plaintiff was terminated for his ineffective sales performance, and the employee's evidence "that four employees in customer service department were fired or resigned" under his supervisor did not show "that discriminatory animus also played a role in the decision").

In addition to the above "statistical" data, Plaintiff argues that her treatment was pretextual because she received positive performance reports before and after her employment with TDI. This type of evidence is similarly insufficient to cast doubt on her negative performance reviews. *See Taylor v. Tex. S. Univ.*, No. 4:12-cv-01975, 2013 WL 5410073, at *7 (S.D. Tex. Sept. 25, 2013) ("This is in keeping with the Fifth Circuit's general tendency not to allow strong performance reviews by one supervisor to undercut the credibility of negative reviews by another."), *aff'd*, 569 Fed. App'x 193 (5th Cir. 2014) (per curiam); *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 555 (S.D. Tex. 1999) ("Any evidence of [Plaintiff's] prior good performance is insufficient to show pretext in light of her more recent performance problems."); *Myers v. Michelin N. Am., Inc.*, 208 F.3d 1007 (5th Cir. 2000) (per curiam) ("[T]he existence of positive comments concerning [Plaintiff's] job performance in his evaluations does not call into question the credence of [Defendant's] proffered explanation.").

Finally, Plaintiff argues pretext by pointing to other discrimination cases brought against TDI in this District. Not only do these lawsuits involve entirely different employees and supervisors, but they also allege discrimination based on age, which is not alleged here. Nevertheless, Plaintiff cites these cases purporting to show a "history of discrimination and retaliation" at TDI. (Doc. No. 15 at 29–30). The Court first notes that the allegations in those cases were disputed, and so the Court will not take judicial notice of their veracity. More importantly, though, the Court does not find these unrelated cases involving discrete acts relevant to Plaintiff's specific allegations of discrimination based on race and gender by TDI at issue here. For the above reasons, Plaintiff has failed to present a fact issue on pretext and consequently cannot overcome Defendants' legitimate, nondiscriminatory reasons for terminating her.

### E. Retaliation Claims under Title VII and Section 1981.

In addition to her discrimination allegations, Plaintiff also alleges that she was retaliated against after requesting a transfer. To establish a *prima facie* case of retaliation under Title VII and § 1981, an employee must demonstrate that: "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). To establish causation, the plaintiff must "demonstrate that the employer knew about the employee's protected activity." *Manning*, 332 F.3d at 883. The Fifth Circuit has specified that "a 'causal link' is established when the evidence demonstrates that the [adverse action] was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (citation omitted). "Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had

knowledge of [her] protected activity." *Manning*, 332 F.3d at 883 n. 6 (5th Cir. 2003). "[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 n. 3 (5th Cir. 1997).

If a plaintiff establishes her prima facie case, the *McDonnell Douglas* burden-shifting framework applies. *Gorman*, 753 F.3d at 171. Under that framework, "the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.*

Here, Plaintiff contends that she was retaliated against (terminated)[7] for reporting her discrimination to Human Resources and requesting a transfer. Defendants argue that Plaintiff failed to raise a genuine issue of material fact on the first and third elements of her claim—protected activity and causation, respectively.

First, Defendants argue that Plaintiff failed to present evidence showing that she engaged in protected activity because she failed to mention her alleged discrimination. Second, Defendants argue that, even if she had engaged in protected activity by requesting a transfer with Human Resources, "the undisputed record shows that Rourke, who made the termination decision, never knew or believed that Plaintiff had complained about discrimination of any kind." After reviewing the briefings, competent summary judgment evidence, and relevant law, the Court agrees and finds that Plaintiff has not raised a material fact issue as to her retaliation claims.

---

[7] Plaintiff also argues that Defendants retaliated by subjecting her to increased surveillance. *See* (Doc. No. 13-39, at 5); *see also* (Doc. No. 15 at 8). These claims fail because there is no materially adverse employment action where an employee is subjected to close scrutiny in the workplace. *See Grice v. FMC Techs. Inc.*, 216 Fed. App'x 401, 404–07 (5th Cir. 2007) (an adverse employment action did not occur when the employer watched the employee more closely).

Plaintiff has presented no competent summary judgment evidence that she engaged in protected activity. Plaintiff vaguely argues that "circumstantial evidence in this case supports retaliation against Ms. Dornellien for making complains [sic] against her supervisors, especially Len Masengale, and requesting a transfer." Plaintiff cites to her deposition and attaches her accompanying affidavit (which this Court has already stricken) to support this argument. In her deposition, however, Plaintiff failed to raise a fact issue supporting protected activity. When asked "what did you say to [the Human Resources professional]," Plaintiff responded: "I told her I wanted to transfer." (Doc. No. 13-1, 167:16-168:2). She went on to admit that during the transfer request, she made no mention of any discrimination, let alone discrimination based on race or gender. (*Id.* at 168:13-169:10). Without a mention of discrimination, Plaintiff has not raised a fact issue as to protected activity. *Harris-Childs v. Medco Health Sols., Inc.*, 169 Fed. App'x 913, 916 (5th Cir. 2006) (appellant failed to demonstrate that she engaged in a protected activity because "there is no evidence that [Appellant], when she made her complaints to management, ever mentioned that she felt she was treated unfairly due to her race or sex") (alteration in original); *Lyles v. Tex. Alcohol Beverage Comm'n*, 379 Fed. App'x 380, 385 (5th Cir. 2010) (same).

Moreover, Plaintiff's retaliation claims fail on the third element as well—causation. Defendants note that there is no evidence that Rourke, the person ultimately responsible for Plaintiff's termination, knew or believed that Plaintiff had complained of discrimination. (Doc. No. 13 at 27). Plaintiff did not address this issue in her 35-page response. Without any evidence that Rourke knew of her alleged protected activity, Plaintiff has not raised a fact issue as to causation. *See Gorman*, 753 F.3d at 171 ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said . . . that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."). Accordingly, Defendants'

Motion for Summary Judgment is hereby GRANTED as to Plaintiff's retaliation claims under Title VII and § 1981.

## V. Conclusion

The Court finds that Plaintiff did not meet her burden of raising a material issue of fact in support of a *prima facie* claim for discrimination, nor has she raised a fact issue that Defendants' proffered explanation was pretextual. For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

Signed at Houston, Texas, this 30th day of November, 2023.

Andrew S. Hanen
United States District Judge